**In the Matter of Robert Henry SHEPHERD, Debtor.**

**MIDDLETOWN CITY EMPLOYEES FEDERAL CREDIT UNION, INC., Plaintiff,**

v.

**Robert SHEPHERD, Defendant.**

**Bankruptcy No. 3–80–00291. Adv. No. 80–0119.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 24, 1981.

---

Don Imhoff, Jr., Middletown, Ohio, for plaintiff.

David A. Chicarelli, Franklin, Ohio, for defendant.

## DECISION

ELLIS W. KERR, Bankruptcy Judge.

### THE PLEADINGS

The Complaint seeks determination of non-dischargeability of a debt for loans to be secured by a truck title which Defendant was to deliver to Plaintiff but which Defendant failed to deliver. It is alleged loans were obtained by false pretenses, false representations and actual fraud. The Answer denies the pertinent allegations.

### SUMMARY OF FACTS AND TESTIMONY

On November 30, 1977, Defendant-Debtor executed a promissory note in the amount of $4,379.88 to Plaintiff. Of this amount, $950.00 was for the purchase of a 1972 truck. The remaining $3,508.44 was a re-write of existing loans that Defendant had with Plaintiff. The note refers to a 1972 truck as being security for the note. No description of the model or serial number is included in the note.

Maxine Girton, an employee of the Plaintiff Credit Union, testified on behalf of Plaintiff that she informed the Debtor that this loan was a secured loan and that Defendant had to bring in the certificate of title for the truck so that Plaintiff could have its lien noted on the title. Defendant was given a check to purchase the truck. According to Ms. Girton, Defendant-Debtor agreed to bring in the title, but failed to do so. Ms. Girton further testified that she sent at least three or four letters by ordinary mail to the Defendant, requesting him to bring in the title, but that he failed to do so. No copies of these letters were kept by the Plaintiff. Girton also testified it was the policy of the Plaintiff not to retain any title if the loan had been paid to an amount less than $2,000.00 but that in this case she had never had the title.

Beverly Davidson, Manager of the Plaintiff Credit Union, testified that she recalled at least three letters being sent to the Defendant; that she did not sign the letters; that no copies were kept; that she was custodian of the records; that Defendant never talked with her after May 17, 1978, the date Plaintiff made an additional $300.00 loan; that Defendant never reported to her of the sale of the truck; that Defendant had had numerous signature loans from the Plaintiff; that the Defendant had a good credit rating; that as to his delinquent accounts the Plaintiff's "Board" had authorized action but never started any action from the time he left employment with the Plaintiff until the time he filed his Petition; that from May to September, 1978, Defendant had paid over $90.00 including $20.00 payments in June, July, August and September; that where the amount of an additional loan was small it was not the policy of Plaintiff to refinance the *entire* amount due but to first grant a new loan for the small amount; that the last letter sent Defendant was a year ago; that it was September, 1978 that Defendant left the employment with Plaintiff; and, that the balance Defendant owed as of January 1, 1977 was $3,733.00 as indicated by the records.

It is undisputed that on May 3, 1978, Defendant sold the 1972 truck to a third party for $1,100.00 and that none of the proceeds of this sale were remitted to Plaintiff. Defendant did not seek Plaintiff's consent to the sale nor notify Plaintiff of the sale.

On May 17, 1978, Plaintiff loaned an additional $300.00 to Defendant and Defendant executed a promissory note to Plaintiff in the amount of $328.00. The note indicates that a 1972 truck is security for the loan. Ms. Girton testified that she told the Defendant he would have to bring in the title to the 1972 truck in order for Plaintiff to note its lien on the title.

Defendant testified that after the first loan was made, he took the title into Ms. Girton, but that several months later she returned the title to him without the lien being placed on the title. According to the Defendant, Ms. Girton told him that the Credit Union didn't need the title any longer. Also, according to Defendant, he at no time refused to deliver a title he was requested to bring in to the credit union.

Defendant testified that when he executed the second note, he only looked at the total amount of the note and the required payments. He did not read the remaining terms and assumed he was signing a "signature" loan. He also testified that he never received any letters except as to the $300.00 he owed; that at the time of the May 17 loan there was no conversation as to his taking to the Plaintiff any title; that he was never asked to deliver title to the truck; that the only request ever made to bring in a title was one to a 1976 auto; and, that he never intended to defraud the Plaintiff.

At the end of all testimony it was agreed that all exhibits were admitted in evidence.

## SUMMARY OF PLAINTIFF'S ARGUMENT

Plaintiff contends that this case arises under § 523(a)(2). (NOTE: Plaintiff does not indicate whether it is proceeding under subsection "A" or "B" of § 523(a)(2). From the language used in its post-trial argument, it is apparently proceeding under "A". In addition, the notes that Debtor signed would have to be very broadly construed to fall under the heading of a statement respecting the Debtor's financial condition.)

Plaintiff claims that both loans were obtained by "false pretenses, false representation and actual fraud."

Plaintiff asserts that a Debtor who "knowingly intends not to perfect a security interest in a motor vehicle, which the creditor has requested he do, and who intends to treat the loan as an unsecured installment loan, and who then sells the vehicle to a third party without consent, and without remitting the sale proceeds to the creditor, has consummated a fraud which makes the debt nondischargeable."

Plaintiff cites only one case in his argument: *In re Hamlet*, Bankr.L.Rep. (CCH) ¶ 66,402 (W.D.Va. March 29, 1977).

## SUMMARY OF DEBTOR'S TRIAL MEMORANDUM

The crucial factor in this case is that on May 17, 1978, Plaintiff made a new loan to Debtor and still did not require the Debtor to bring in the title. Further, the Debtor testified that he did turn in the title to Plaintiff, but that it was given back to him without the lien being noted on the title.

Under former § 523(a)(2) false representations had to have been knowingly and fraudulently made before a discharge could be refused. Fraud, implied in law, was insufficient.

For a creditor to successfully assert a claim of false representation, the creditor must have actually relied on the representation and the reliance must have been reasonable.

A lender has the duty to exercise ordinary prudence in order to avoid the discharge of a debt on the grounds that the debt is for obtaining money or property by false pretenses or false representations. In the instant case, Plaintiff did not exercise ordinary care. It is totally inconceivable how approximately six months could pass by, a new loan made, and no demand for the certificate of title to be made if that actually is the credit unions policy regarding certificates of title.

Intent is an essential element in cases of this nature. No evidence whatsoever has been offered to show intent on behalf of Robert Shepherd to cheat the Middletown Credit Union of any security interest. To the contrary he continued to work at the same place, make his payments and actually went into the office and applied for a new loan. These certainly are not the actions of an individual who intended to defraud a creditor.

## CONCLUSIONS OF LAW

*Section 523(a)(2)*

(a) a discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

## PARTIAL LEGISLATIVE HISTORY OF § 523(a)(2)

"Subparagraph (A) is intended to codify current case law e. g. *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887), which interprets 'fraud' to mean actual or positive fraud rather than fraud implied in law. Subparagraph (A) is mutually exclusive from subparagraph (B). Subparagraph (B) pertains to the so-called false financial statement." [124 Cong.Rec. H 11,095–6 (Sept. 28, 1978); S 17,412–13 (Oct. 6, 1978).]

"Paragraph (2) provides that as under Bankruptcy Act section 17a(2), a debt for obtaining money, property, services, or a refinancing extension or renewal of credit by false pretenses, a false representation, or actual fraud, or by use of a statement in writing respecting the Debtor's financial condition that is materially false, on which the creditor reasonably relied, and which the Debtor made or published with intent to deceive, is excepted from discharge. This provision is modified only slightly from current section 17a(2). First, 'actual fraud' is added as a ground for exception from discharge. Second, the creditor must not only

have relied on a false statement in writing, but the reliance must have been reasonable. This codifies case law construing present section 17a(2)." [Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 77–79, U.S.Code Cong. & Admin.News, 5787, 5864.]

█ As to the first loan Plaintiff contends that when the Debtor failed to bring in his certificate of title for perfection of Plaintiff's lien, the Debtor obtained money by false pretenses, false representations or actual fraud.

Debtor's actions amounted at most to a breach of contract, i. e. he simply did not fulfill an agreement.

1. "Fraud cannot be predicated upon statements which are promissory in their nature as to future acts." *Warner v. Jeter*, 115 Ga.App. 6, 153 S.E.2d 626 (1967).

2. "A false promise to perform an act in the future is not a false pretense or false representation." *Stephens v. Milikin*, 35 Ga.App. 287, 133 S.E. 67 (1926).

Plaintiff cites only one case in its brief: *In re Hamlet*, Bankr.L.Rep. (CCH) ¶ 66,402 (W.D.Va. March 29, 1977).

There the Court found the Debtor's actions to be a preconceived and intentional practice of deceit. The Judge also found the bankrupt did not intend to carry out his agreement to perfect a security interest in the car. In the instant case, there is insufficient evidence to support a finding that the Debtor at the time of obtaining the loan did not intend to carry out the agreement.

█ Plaintiff's conduct is important. Despite the importance Plaintiff places on Debtor's failure to bring in the title, Plaintiff made a second loan to Debtor. At this point Plaintiff had the opportunity to demand that the title be brought in, before it extended further credit. Yet, it failed to do so. This conduct amounts to an estoppel, lack of due care and a waiver of the agreement to bring in the title for the first loan.

As to the second loan, Debtor signed a note which stated that the security for this loan was the 1972 truck. But he testified

he did not read the note—only the amount and terms of payment. Debtor had already sold the truck, but without more, the Court would find the second loan to be nondischargeable.

 A necessary element in cases involving false representations, false pretenses, and actual fraud, is reliance by the creditor. And this reliance must be reasonable reliance. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *Beamer v. Feick*, 113 Ohio App. 264, 177 N.E.2d 691 (1960). In view of the fact that Plaintiff's witnesses testified that Debtor had not brought in the title as promised, the Plaintiff sent three or four letters to Debtor, but that Debtor still did not respond. How can Plaintiff's reliance on a second promise to bring in the title be characterized as reasonable? Again, Plaintiff's own conduct put it in the position it now complains of. Plaintiff cannot conduct business without due care and then maintain that as a result of deception it extended credit.

§ 523(a)(2)(A) requires that the false representations be the reason for the creditor's extension of credit. Even if a false representation were made here and the creditor did extend credit, there is insufficient evidence that the two events are causally connected.

We further conclude as a matter of law: that the November 30, 1977 note for $4,379.88 and the May 17, 1978 note for $328.80 created no security interest in the 1972 truck (the notes referred to the truck and a security agreement but there is no evidence a security agreement was ever executed); that Plaintiff's exhibit 1 is merely a sales slip for purchase of the truck (it is but circumstantial evidence that the truck was bought); that Defendant's exhibits 1, 2 and 3, all notes executed in years prior to the notes in question have no legal significance as applied to the matter in dispute except to the extent they support the position of the Defendant of past dealings considered signature loans.

Defendant's exhibit 1 note refers to a 1976 truck in a manner similar to the November 30, 1977 and May 17, 1978 notes making reference to the 1972 truck.

Exhibit 2 of the Defendant is clearly a signature loan. Exhibit 3 has the word "signature" on it but still makes reference to a 1976 truck (a practice that could be described as "slip-shod").

The Defendant as previously mentioned, testified he thought he was signing a signature loan. The exhibits of the Defendant reveal former dealings which tend to give credence to his testimony.

Regardless of whether we consider either or both loans the Plaintiff has failed to sustain the burden of proof necessary to hold the debt nondischargeable. There is direct conflict in testimony as to whether the Defendant was ever asked to bring in the title. If decision had to be made on this alone we might conclude it was a so-called 50–50 deal and that, therefore, the Plaintiff failed to sustain the burden. But considering all testimony and evidence there is no question that intent to deceive was not proved.

Lending institutions are more sophisticated and knowledgeable in regard to loan and lien matters than are the ones to whom they make loans. It is not good business practice to turn over money until the one making the loan and wishing to retain a lien has reserved to itself all responsibility for doing all that is necessary to perfect the lien. To make the loan and rely upon the recipient assuming part of this responsibility is not only bad practice but creates a situation of which the loaning agency should not complain if the one getting the loan fails to do something promised to be done *in the future*. That is what the Plaintiff did in this case. In the past this Court has ruled against creditors in such situations. We find nothing in this case that requires a different conclusion.

Judgment shall be in favor of Defendant for dischargeability by separate document as provided in Rules of Bankruptcy Procedure.