**In re Jeffrey S. BEGUN, Wendy S. Begun, Debtors.**

**GERMAIN LINCOLN MERCURY OF COLUMBUS, INC., Plaintiff,**

**v.**

**Jeffrey S. BEGUN, Defendant.**

**Bankruptcy No. 2–90–04369.**
**Adv. No. 2–90–0247.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 29, 1992.

John E. Haller, Robert J. Mann, Schrim & Greenwald, Columbus, Ohio, for plaintiff.

Mark Ditullio, Columbus, Ohio, for debtor/defendant.

John C. Deal, Robert G. Cohen, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for Robert P. Anderson, amicus curiae.

Thomas C. Scott, Thompson, Hine & Flory, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

OPINION AND ORDER ON COMPLAINT
TO DETERMINE DISCHARGEABIL-
ITY OF DEBT

R. GUY COLE, Jr., Bankruptcy Judge.

I. *Findings of Fact*

Germain Lincoln Mercury of Columbus, Inc. ("Germain") commenced this adversary proceeding against the debtor, Jeffrey S. Begun (the "Debtor"), demanding that

judgment be entered in Germain's favor and against the Debtor in the amount of $19,660. Germain also requested a declaration that "Begun's indebtedness to [Germain] is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)." Complaint, para. 19B.

The Debtor answered the Complaint and stated two counterclaims against Germain. First, the Debtor alleged that Germain violated the automatic stay imposed by 11 U.S.C. § 362(a) by taking the Debtor's oral deposition after the bankruptcy petition was filed. Actual damages, including costs and attorneys' fees, and punitive damages were requested. Second, the Debtor alleged that Germain violated Fed. R.Bankr.P. ("Bankruptcy Rule") 9011 by not conducting a reasonable inquiry before filing the Complaint in order to determine that it was "well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Counterclaim, para. 32. A Motion for Summary Judgment on the counterclaims was filed by Germain on November 15, 1991. An Order Granting Summary Judgment was entered on January 8, 1992, the date of the trial of this proceeding.

The record discloses that Scioto Valley Dealership ("SVD"), an Ohio corporation, was engaged in the business of acquiring and selling used motor vehicles. The Debtor, owner of 50 percent of SVD's common shares, ran the company's daily operations. Karl Demler, owner of the other 50 percent of SVD's common shares, served as SVD's "financial backing." Transcript, p. 101. SVD had one or two other employees, including Larry Chizek. SVD ceased doing business in or about September, 1990.

In late 1988 or early 1989, SVD and Germain entered into a verbal arrangement pursuant to which SVD would purchase used motor vehicles wholesale from Germain for retail resale. SVD was to pay Germain for purchased vehicles with checks drawn on its business account at the Fifth Third Bank of Columbus ("Fifth Third"). However, several checks issued to Germain by SVD were dishonored by

Fifth Third due to insufficient funds in SVD's account. These checks were eventually honored. Transcript, p. 18. Germain nevertheless insisted that any subsequent purchases by SVD be "on a cash basis," meaning Germain would have to be paid by cashier's check, money order, or "something guaranteed." *Id.*

After learning that Germain would accept only "cash" from SVD, the Debtor approached Germain's controller, Sandra Flanagan, about SVD purchasing vehicles pursuant to a "sight draft arrangement." Chizek had initially suggested use of such an arrangement to Begun. Transcript, pp. 156–57. According to Germain, the Debtor made several express and implied misrepresentations regarding this arrangement. The most significant allegation is that the Debtor informed Flanagan that SVD had obtained a line of credit from Fifth Third which would be sufficient to cover purchases of motor vehicles. Germain contends that in reality SVD's line of credit was too low to cover such purchases.

It is undisputed that SVD had a line of credit through Fifth Third from the time SVD commenced business until the time it ceased operations. The Debtor testified that the line of credit had a limit of $20,000; Demler estimated the limit to be $25,000 or $30,000. Based on the strength of the Debtor's recollection, and Demler's uncertainty as to the exact amount, the Court determines the amount of the line of credit that SVD had at Fifth Third to be $20,000. At the time the sight draft arrangement was entered into, this $20,000 line of credit at Fifth Third was the only financing available to SVD from Fifth Third.

Germain also alleges that the Debtor represented that the arrangement "would operate like a floor plan." Transcript, pp. 20–21. Germain understood that it would "sign off" on a vehicle's certificate of title, insert the title inside the draft (which was in the form of an envelope), and deposit the draft into its checking account at BancOhio National Bank. BancOhio, in turn, was to forward the draft and title to Fifth Third for payment. Transcript, p. 19. Fifth Third then was to release the title to SVD

upon acceptance of the sight draft by SVD. Germain understood that it would be paid upon acceptance of the draft; its account at BancOhio was to be credited within 24 to 48 hours after receipt of the draft by Fifth Third. *Id.* Flanagan testified that she is unaware of any floor plan arrangement where the seller is not paid for a vehicle until the dealer sells it. According to Flanagan, Germain was not interested in an arrangement in which Germain would be paid four to eight weeks after delivery of the sight draft; Germain expected immediate payment and crediting of its account. Transcript, pp. 24–25.

Although the arrangement between Germain and SVD was not reduced to writing, Flanagan testified that she contacted SVD's banker at Fifth Third, Bob Anderson, whose name was given to her by the Debtor in order to verify the line of credit and sight draft arrangement. Anderson assured Flanagan that "everything was in place." Transcript, p. 23. However, there is no evidence that Anderson discussed a sight draft or floor plan financing arrangement with Flanagan. Moreover, Anderson denies speaking with Flanagan about SVD's line of credit or about a sight draft arrangement.

Pursuant to this arrangement, Germain first began using sight drafts in late April 1989. The evidence demonstrates that after Germain deposited a sight draft and title into its BancOhio account, those documents were delivered to Fifth Third. Fifth Third, upon the receipt of the draft and title, would release the title to SVD. Thus, the title would be in SVD's possession prior to SVD's formal acceptance of the draft and prior to paying Germain. In other words, contrary to Germain's understanding of how the sight draft arrangement was to work, Fifth Third was releasing titles to vehicles prior to accepting the sight drafts and paying Germain. Oftentimes, as a result, Germain would not be paid, and its account would not be credited, for up to eight weeks while Fifth Third awaited the deposit by SVD of sufficient funds into its account to pay the sight draft. During this often eight-week period, SVD was in possession of certificates of title sent to Fifth Third by BancOhio. It is unclear whether Germain would deliver the actual vehicles prior to payment.

Germain alleges that it has not been paid for two of the seventeen vehicles sold to SVD pursuant to the sight draft arrangement. Germain concedes it was paid for the other fifteen, although often not within the time period it believes it should have been paid. The two vehicles for which Germain has not been paid are a 1985 Ford Crown Victoria and a 1989 Buick LeSabre, for a total amount of $19,660. These vehicles were bought by SVD on or about May 26, 1989. On June 13, 1990, SVD transferred title to the Buick to Len Immke Buick, Inc.; on June 30, 1990, SVD transferred title to the Ford to Hubert L. Lewis.

The Debtor was not a personal obligor on any of the seventeen purchases of vehicles from Germain. However, Germain contends that the Debtor "benefitted from the fraud committed on [Germain] and should not be permitted to discharge the debt owed to [Germain]." Complaint, para. 19. Although the Complaint fails to state how the Debtor benefitted from any alleged fraud, or on what basis he should or could be held personally liable for SVD's debt to Germain, Germain seeks a judgment of $19,660 against Debtor and a declaration of nondischargeability.

## II. *Conclusions of Law*

■ The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(I).

A. 11 U.S.C. § 523(a)(2)(A)

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition; ...

11 U.S.C. § 523(a)(2)(A) (1991). To succeed on a claim brought pursuant to § 523(a)(2)(A), the following must be proven by a preponderance of the evidence:[1] (1) that the debtor received money, property, or credit by a false pretense or representation, or actual fraud; (2) that the debtor knew of the falsity at the time made; (3) that the pretense, representation or fraud was made with the intent of deceiving and was reasonably relied upon by the creditor; and (4) that the creditor suffered a loss. *ITT Financial Serv. v. Long (In re Long)*, 124 B.R. 54, 55 (citing *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986); *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1165 (6th Cir.1985)). Exceptions to the general rule of dischargeability of debts must be construed strictly in favor of the debtor. This is to keep with spirit and purpose of the Bankruptcy Code to effectuate a fresh start. *James v. McCoy (In re McCoy)*, 114 B.R. 489, 498 (Bankr.S.D.Ohio 1990) (citing *Eisen v. Linn (In re Linn)*, 38 B.R. 762 (9th Cir. BAP 1984)). As the statute is framed in the disjunctive, while a plaintiff asserting a § 523(a)(2)(A) claim must demonstrate that property was obtained by false pretenses, a false representation, or actual fraud, a showing of only one of the three offending conducts is required. *McCoy*, 114 B.R. at 498.

■ As an initial matter, Germain must show that it incurred a loss. It has not done so. Flanagan worked at Germain for two years, beginning in 1988. Transcript, pp. 13–14. She left Germain in December, 1990, when it was purchased by the Krieger family. Transcript, p. 33. She then went to work for Dennis Pontiac as its controller, where she is now employed. Transcript, p. 13.

The Complaint was filed on September 17, 1990, and alleges that Germain has never been paid the $19,660 "owed to it by Begun and SVD." Complaint, para. 18. However, there was no evidence at trial that Germain is still owed this money. Flanagan, who has not worked at Germain in over a year, when asked if Germain was ever paid, testified that "No, not to the best of my knowledge." Transcript, p. 33. But she admits she left Germain on December 20, 1990. *Id.* And there is no evidence that she has reviewed Germain's books and records in over a year. Thus, the Court has no probative evidence that there is even a debt owed Germain by SVD. Nor is there evidence that the Debtor owes, or should owe, any money to Germain. In fact, the Debtor believes that Germain was paid in full for all vehicles sold to SVD. Transcript, pp. 144–45. On these bases alone, the Complaint can be, and is, denied and judgment is entered in Debtor's favor.

### 1. *False Pretense, False Representation or Fraud*

■ Assuming, *arguendo*, that Germain had proven that SVD or Debtor owes it money, it would have to establish that such debt was incurred by a false representation, false pretense or fraud. A "false pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression. *McCoy*, 114 B.R. at 498; *Howard & Sons, Inc. v. Schmidt (In re Schmidt)*, 70 B.R. 634, 640 (Bankr. N.D.Ind.1986); *Minority Equity Capital Corp. v. Weinstein (Matter of Weinstein)*, 31 B.R. 804, 805 (Bankr.E.D.N.Y.1983). A false pretense has been defined to include a "mute charade," where the debtor's conduct is designed to convey an impression without oral representation. *Evans v. Dunston (In re Dunston)*, 117 B.R. 632, 639–40 (Bankr.D.Colo.1990) (citing *In re Thomas*, 12 B.R. 765, 769 (Bankr.N.D.Ga. 1981)). A "false representation," on the other hand, is an expressed misrepresentation. *Dunston*, 117 B.R. at 640; *Beverly*

---

**1.** The Supreme Court held recently that a person requesting a determination of nondischargeability under § 523(a) must sustain his burden by a preponderance of the evidence. *Grogan v. Garner*, ⸺ U.S. ⸺, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This decision abrogates the rule of the Sixth Circuit that the standard of proof in such cases is clear and convincing evidence. *See, e.g., Coman v. Phillips (In re Phillips)*, 804 F.2d 930 (6th Cir.1986); *Ellis v. Shear (In re Shear)*, 123 B.R. 247, 249 (Bankr.N.D.Ohio 1991).

*Enterprises v. Eversole (In re Eversole),* 110 B.R. 318 (Bankr.S.D.Ohio 1990). A debtor's silence may constitute a materially false misrepresentation prohibiting discharge of the indebtedness. *McCoy,* 114 B.R. at 489; *Russell v. Piercy (Matter of Piercy),* 96 B.R. 953, 955 (Bankr.W.D.Mo. 1989)

The Court then must determine whether the Debtor's representation that SVD had a line of credit from Fifth Third, which was available to it for the purchase of motor vehicles from Germain, was false because the line of credit had an undisclosed limit of $20,000. It is without dispute that the Debtor informed Flanagan that SVD had a line of credit at Fifth Third; SVD did indeed have this line of credit. That the amount of this line of credit was less than what Germain perceived it to be does not mask the fact that the amount was never discussed; Germain never asked and the Debtor never informed Germain of the amount. Germain asserts that $20,000 clearly was insufficient to pay for vehicles purchased from it. The Debtor testified that a $20,000 line of credit was sufficient to cover the anticipated purchases from Germain by SVD on a week-to-week basis. In fact, payment was received by Germain for the vast majority of the vehicles purchased.

Viewing the totality of the circumstances, Germain has failed to prove that the Debtor or SVD obtained credit by a false pretense, false representation, or actual fraud. There simply is no evidence that the Debtor misrepresented, either expressly or impliedly, the extent of SVD's line of credit at Fifth Third. Moreover, the Court is persuaded that the Debtor believed the line of credit was sufficient in amount. Even if, upon hindsight, it is determined that $20,000 was not sufficient to fund purchases from Germain—a fact not established by Germain—the Debtor made no false representation to Germain. On the contrary, if anyone is to be blamed, it is Germain to the extent it believed a higher limit on the line of credit was required but never made such higher limit a condition of the parties' agreement. Hence, the Debt-

or's silence as to the credit line's limit was not fraudulent in any respect.

■ With respect to Germain's assertion that the Debtor misrepresented the nature of the sight draft arrangement, the evidence establishes that SVD's line of credit at Fifth Third could be activated by the use of sight drafts. The gist of Germain's claim appears to be that the Debtor misrepresented that the sight draft arrangement would be used "just like a floor plan," while this did not turn out to be the case. Transcript, p. 21. Flanagan testified that she is unaware of any floor plans in the motor vehicle business by which the seller will not be paid for a vehicle until it is sold by the dealer. Transcript, p. 22. The Debtor does not deny this allegation. Rather, he asserts that it was the responsibility of Fifth Third to transfer funds to Germain's account at BancOhio upon receipt of a sight draft, and he does not know why the sight drafts were accepted and payment not issued until weeks after being forwarded to BancOhio by Germain and/or delivered to Fifth Third. While Germain has proven that Fifth Third delivered certificates of title to SVD before transferring funds to Germain—as much as two months before Germain's account at BancOhio was credited—Germain has not proven that the Debtor made any false pretenses or representations, or committed any fraud, in connection with the sight draft arrangement. Just because Flanagan is unaware of any floor plans by which the seller will not be paid for a vehicle until it is sold by the dealer, does not mean that all floor plans work in this manner; nor does it establish any actionable wrongdoing by the Debtor.

■ Moreover, Germain has failed to demonstrate that the Debtor falsely represented that Fifth Third would guarantee the payment of all obligations incurred by SVD through the sight drafts. There is no evidence that the Debtor made any such representation. Although there is a conflict in the testimony of Anderson and Flanagan, this does not establish that the Debtor made misrepresentations concerning a guarantee of Fifth Third. While Germain may have a claim against Anderson

and Fifth Third, the Court concludes that Germain has fallen far short of proving this claim as against the Debtor.

### 2. *Intent to Deceive*

█ Any representation made by a debtor must have been made with "intent to deceive." *Phillips*, 804 F.2d at 934; *Martin*, 761 F.2d at 1167. Accepting the fact that people rarely will admit openly of deceitful intent, all facts, including circumstantial evidence, may be relied upon to support such a finding; intent may be inferred. *See, e.g., Caspers v. Van Horne (Matter of Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987); *Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 754 (9th Cir.1985); *Long*, 124 B.R. at 56. There simply is no evidence that the Debtor intended to deceive Germain. At worst, SVD was buying vehicles from Germain with the hope that it would sell them quickly enough to pay Germain before Germain terminated the arrangement. The fact that Germain did not receive payment for two of the vehicles it sold SVD pursuant to the sight draft arrangement does not mean that the Debtor, or others at SVD, intended to deceive Germain. Nor was any evidence of deceptive intent, circumstantial or otherwise, adduced at trial. Thus, Germain has failed to prove that the Debtor intended to deceive it.

### 3. *Reasonable Reliance*

█ Some courts have adopted the view that reasonable reliance is not an element under § 523(a)(2)(A). *See, e.g., Thul v. Ophaug (In re Thul)*, 827 F.2d 340 (8th Cir.1987); *In re Sobel*, 37 B.R. 780, 785–86 (Bankr.E.D.N.Y.1984). The Sixth Circuit, however, does not follow this view, recognizing reasonable reliance as a requisite element of a § 523(a)(2)(A) cause of action. *Phillips*, 804 F.2d at 933. " 'Congress was [when passing § 523] ... concerned that creditors use, when feasible, other sources of information, such as credit bureau reports, to verify the accuracy of the [debtor's] list of debts.' " *Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1084 (6th Cir.1988) (quoting *Martin*,

761 F.2d at 1166). The reasonableness requirement is not rigorous, but is directed at creditors acting in bad faith. *Phillips*, 804 F.2d at 933 (quoting *Martin*, 761 F.2d at 1166). A determination of reasonableness is to be made by evaluating all the facts and circumstances of the case. *Phillips*, 804 F.2d at 933.

█ Even had Germain proven that the Debtor made the alleged misrepresentations, Germain's reliance was not reasonable. The Debtor never represented the amount of the line of credit to Germain and Germain never asked. The only step taken by Germain to verify the line of credit was a call to Anderson at Fifth Third in which he simply said "everything is in place." A creditor "cannot conduct business without due care and then maintain that as a result of deception it extended credit." *First Nat'l Bank of Cincinnati v. Hagedorn (In re Hagedorn)*, 25 B.R. 666, 669 (Bankr. S.D.Ohio 1982) (quoting *In re Shepherd*, 13 B.R. 367 (Bankr.S.D.Ohio 1981)). Germain's unjustified assumption that the line of credit was more than $20,000 does not come close to the standard of reasonableness.

### B. Piercing the Corporate Veil

█ The debts owed Germain are debts of SVD, an Ohio corporation, not personal obligations of the Debtor. Certain circumstances, however, justify holding an individual liable for the debt of a corporation. *See, e.g., Huntington Nat'l Bank v. Parton (In re Parton)*, Adv.Pro.No. 2–91–0080, slip op. at 5 (Bankr.S.D.Ohio Dec. 4, 1991). In the instant matter, the Complaint fails to specify the basis, if any, upon which the Debtor should be held personally liable for the debts of SVD.

Germain filed a trial brief on the day of the trial, in which it asserted, for the first time, that SVD's corporate veil should be pierced and Debtor held personally liable for the debts of SVD. Mere assertions in a trial brief are not grounds to pierce the corporate veil and find that the Debtor is liable personally for the debts of SVD. Not only were there no bases asserted in

the Complaint as to the Debtor's personal liability—other than a vague reference that Debtor somehow benefitted from his alleged fraud—no facts were adduced at trial which support a determination of personal liability. Thus, there is no evidence supporting a piercing of SVD's corporate veil or a determination that the Debtor should be held personally liable for any debt of SVD to Germain, if such a debt still exists.

### III. *Conclusion*

Based upon the foregoing, Germain has failed to prove that it is owed $19,660 or that the Debtor obtained property or credit by a false pretense, false representation, or actual fraud. Accordingly, judgment on the Complaint shall be entered in favor of the Debtor and against Germain.

IT IS SO ORDERED.