In re Paul FOWLER, Debtor.

Robert WRIGHT, et al., Plaintiffs,

v.

Paul FOWLER, Defendant.

Bankruptcy No. 91–32652.
Adv. No. 92–3314.

United States Bankruptcy Court,
N.D. Ohio, W.D.

March 22, 1994.

Gary Frame, Douglas O'Meara, New Philadelphia, OH, for plaintiffs.

James Luton, Marion, OH, for defendant.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon Robert and Karen Wright's (the "Wrights") complaint to except the debt of Paul Fowler ("Fowler") from discharge under 11 U.S.C. § 523(a)(2)(A). The Court finds that the Wrights' complaint is well taken and that the debt owed by Fowler to the Wrights should be excepted from discharge.

### FACTS

Fowler filed a petition under chapter 13 of title 11 on July 3, 1991 which was subsequently converted to a case under chapter 7 on April 8, 1992.

Fowler conveyed a house in Coshocton, Ohio (the "House") to the Wrights in October of 1990. Before conveying the House to the Wrights, Fowler informed them that the House was encumbered by a mortgage owed to the Veterans Administration (the "V.A. Mortgage"). However, Fowler failed to disclose a mortgage owed to City Loan Bank (the "City Loan Mortgage") to the Wrights. In responding to questions about his knowledge of the City Loan Mortgage at the time that he conveyed the House to the Wrights, Fowler testified that he "knew all along that City Loan hadn't been paid". Nonetheless, Fowler "represented to the [Wrights] ... that there were no outstanding liens or mortgages on the property conveyed to the [Wrights], when in fact there was an outstanding loan with City Loan". *See* Stipulations of Fact, p. 2, para. 7; *see also* Plaintiff's Exhibit 2, para. 3 (stating that "Seller shall convey to Purchaser marketable title in fee simple absolute by transferable and recordable general warranty deed ... free and clear of all liens and encumbrances not excepted by this contract").

The parties agree that the Wrights relied on representations by Fowler that the House was not subject to any mortgages other than a V.A. mortgage. However, the parties are in dispute as to whether such reliance was reasonable. The parties are also in dispute with regard to whether Fowler had the intent to defraud the Wrights.

Mr. Wright testified that he and Fowler did not have a social relationship. Nevertheless, Mr. Wright testified that he knew Fowler for 4–5 years while participating on the "fire brigade" at the General Electric Plant where both he and Fowler were employed. Fowler served as "fire chief" of the fire brigade. Mr. Wright testified that he met with Fowler at least once a month at fire brigade meetings. Mr. Wright testified that he found Fowler to be trustworthy during the course of their work relationship.

Fowler testified that he worked with Mr. Wright at General Electric and spoke with him on a number of occasions regarding Mr. Wright's participation on the "fire brigade".

Polly Scherer, Office Manager of City Loan Financial Services, testified that Fowler owed $11,540.95 on the City Loan Mortgage in October, 1990. Scherer further testified that Fowler made a number of payments on the City Loan Mortgage subsequent to the date that Fowler conveyed the House to the Wrights.

## DISCUSSION

### Applicable Statute

Section 523(a) provides that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) ... a false representation ... other than a statement respecting the debtor's ... financial condition[.]

### Burden of Proof

 The Wrights must prove their claim under 11 U.S.C. § 523(a)(2)(A) by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

 The Sixth Circuit has interpreted 11 U.S.C. 523(a)(2)(A) as requiring the creditor to prove:

that the debtor obtained money[,] [property, services, or an extension, renewal or refinancing of credit,] through a material misrepresentation that at the time the Debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.

*Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986) (citations omitted); *c.f. BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1559 n. 3 (6th Cir.1992), *cert. denied sub nom.* —— U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993) (finding reasonable reliance but not deciding the issue of whether reasonable reliance requirement survived the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. at 279, 111 S.Ct. at 655).

Fowler's failure to list a prior mortgage in excess of $11,000.00 was material in the Wrights' decision to assume the V.A. Mortgage and purchase the House.

 Furthermore, despite Fowler's assertions that he did not intend to defraud the Wrights, the Court can only conclude that Fowler's failure to disclose the City Loan Mortgage constituted "gross recklessness". Indeed, Fowler's testimony that he inadvertently failed to disclose the City Loan Mortgage to the Wrights was incredible. Although Fowler was well aware of the existence of the City Loan Mortgage, Fowler "represented to the [Wrights] ... that there were no outstanding liens or mortgages on the property conveyed to the [Wrights], when in fact there was an outstanding loan with City Loan". *See* Stipulations of Fact, p. 2, para. 7. Such "gross recklessness" warrants the inference of an intent to defraud. *See In re Phillips*, 804 F.2d at 933–34 ("inferr[ing] that the [debtors] knowingly made a materially false representation" where the debtors "admi[tted] that they knew the purpose of a mortgage deed and that they knew the deed description was inaccurate"). Thus, the Court concludes that Fowler possessed the intent to defraud the Wrights.

 Lastly, the Court concludes that the Wrights reasonably relied on Fowler's false statements. "Assuming that a reasonableness requirement still exists after *Grogan v. Garner*, the requirement merely prevents creditors from looking the other way in the face of facts that ought to raise suspicions." *In re Ledford*, 970 F.2d at 1560. The Sixth Circuit's analysis in *Phillips* controls the outcome of the instant adversary. *In re Phillips*, 804 F.2d at 930. The creditor/attorney in *Phillips* did not conduct a title search before extending a loan to the debtor/defendants. Nevertheless, the *Phillips* court found cases involving commercial lenders inapposite to a situation where a creditor/attorney made a loan to debtors who belonged to the same church group. *Phillips*, 804 F.2d at 933. The Sixth Circuit found that the creditor/attorney reasonably relied on the debtors' false representations absent any "red flags" where the creditor/attorney had known the debtors for twenty-five years and had visited the debtors' farm annually to attend functions organized by the same church group.

The Debtor's counsel conceded at trial, consistent with Mr. Wright's testimony, that there were no "red flags" which would have alerted the Wrights to the inaccuracy of Fowler's representations. Additionally, the Wrights were not sophisticated commercial creditors. Moreover, Mr. Wright found Fowler to be trustworthy as a result of their work relationship. In view of the facts presented at trial, the Court finds that the Wrights reliance upon Fowlers' representations was not "so unreasonable as to negate any actual reliance". *In re Ledford,* 970 F.2d at 1560 (citation omitted).

In light of the foregoing, it is therefore

**ORDERED** that the debt owed from Paul Fowler to Robert and Karen Wright which arose from the City Loan Mortgage be, and it hereby is, excepted from discharge.