**In re Richard Paul SPRAGUE and Ruthann Sprague, Debtors.**

**Joseph BLASCAK III and Deborah Blascak, Plaintiffs,**

**v.**

**Richard Paul SPRAGUE and Ruthann Sprague, Defendants.**

No. 96–40359.

Adversary No. 96–4056.

United States Bankruptcy Court, N.D. Ohio.

Feb. 21, 1997.

John P. Lutseck, Vienna, OH, for Plaintiffs.

David L. McCombs, Andover, OH, for Debtors/Defendants.

Carl D. Rafoth, Trustee, Youngstown, OH.

Donald M. Robiner, United States Trustee, Cleveland, OH.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This cause is before the Court on the complaint of Plaintiffs Joseph and Deborah Blascak ("Plaintiffs") against Defendants Richard and Ruthann Sprague ("Defendants") seeking to determine the dischargeability of a claim pursuant to 11 U.S.C. § 523(a)(1) and/or (2). At issue is whether Defendants intentionally and wrongfully misrepresented the existence of defects when selling their home to Plaintiffs so to warrant finding Plaintiffs' claim nondischargeable due to fraud. Plaintiffs contend that they are owed a sum certain for damages and costs incurred as a result of undertaking necessary repairs to the property. The Court has considered the evidence and arguments of counsel and, for the reasons that follow, holds that Plaintiffs' claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). However, because this Court's findings address only the dischargeability issues governed by federal law, we remand this cause to the Ashtabula County Court of Common Pleas for further consideration of issues governed by state law, including the applicability of Ohio Revised Code § 5302.30 and a determination of the amount of Defendants' aggregate debt and the extent, if any, of Plaintiffs' damages.

The Court has jurisdiction over this proceeding pursuant to the General Order of Reference entered by the United States District Court for this District and pursuant to the provisions of 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This matter was tried to the Court on October 8, 1996 and has been submitted for decision. John P. Lutsek, Esq. appeared as counsel for Plaintiffs and David L. McCombs, Esq. appeared on behalf of Defendants. The following constitutes the Court's findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052.

## FACTS

On July 20, 1994, Plaintiffs filed an action in the Ashtabula County Court of Common

Pleas against Defendants, *et al.*, for fraud in the sale of real estate.[1] On February 29, 1996, Defendants herein filed a Chapter 7 bankruptcy petition. Notice of Defendants' bankruptcy was later filed in the Ashtabula County Court of Common Pleas on March 5, 1996, thus staying the state case pending a determination of nondischargeability of Plaintiffs' claim by this Court.

The following facts are undisputed. In the late 1970's, Defendants purchased the property known as 5571 Slater Road, Williamsfield, Ohio ("Slater Road"), for approximately $26,000.00. Defendants testified that this property was used as their principal residence from 1978 until 1993 (16 years) during which time they reared a number of foster children and cared for Defendant Richard Sprague's ("Mr. Sprague") ailing father. Upon purchasing Slater Road, Mr. Sprague testified that he made numerous improvements to the property which included wallpapering, painting, minor electrical work and some plumbing. He testified that his plan for improvement was to refurbish each room of the house, one by one—pulling off walls, reinsulating and replumbing. He also stated that he replaced old wiring and installed additional outlets in each room since, originally, the house only had one outlet per room.

However, despite testifying that his employment as a switchboard installer with Western Electric had familiarized him with the standards of that industry, Mr. Sprague stated that the improvements to Slater Road were performed on his own and without the assistance of trained professionals. He also testified that he had no previous experience or training in either household electrical work or plumbing and that he proceeded

without securing the necessary building permits. Mr. Sprague further admitted that at no time after making his improvements did he have the house inspected to ensure compliance with applicable codes. Presently, Defendants are retired and receive approximately $2,200.00 in monthly benefits.[2] Mr. Sprague, now 63 years old, retired in 1983 from Western Electric after having problems with his health. Mrs. Sprague, now 62 years old, has experienced similar health problems, including asthma, high cholesterol and a heart condition.

In the summer of 1993, Defendants placed Slater Road on the market, listing the house with Spieth Realty of Andover, Ohio. The listing sheet priced the home at $77,900.00 and described the property as follows:

> 5 bedroom home located on 3 acres. Park like setting with fruit & nut trees & berry bushes. $7 \times 15$ greenhouse. Ceiling fans in every room—Sears washer & dryer remain—all new plumbing—wiring & heavily insulated.

(Plaintiffs' Exhibit 3). The listing sheet also advertised the home as having two bathrooms, a den, a porch, a deck, electric heat, Anderson windows, a septic tank, plastic piping for plumbing, an asphalt roof, a gravel driveway and an on-premises well for water. (Plaintiffs' Exhibit 3). In August of 1993, Plaintiffs entered into negotiations with Defendants to purchase the home. On October 5, 1993, Plaintiffs and Defendants closed the sale of Slater Road at a final purchase price of $72,000.00.[3] According to their agreement, Plaintiffs were to assume possession of Slater Road 30–45 days from the date of closing, pending the sale of their former residence.[4] On November 5, 1993, Plaintiffs again visited the residence at which time

1. *See Blascak v. Sprague, et al.,* Case No. 94CV479 (Ashtabula County C.P., Ohio, July 20, 1994). Named defendants include Richard P. Sprague, Ruthann Sprague, Paul Mikula, Hillier Realty, Judy Pezzano and Spieth Realty.

2. Mr. Sprague receives approximately $1,000.00 per month in pension benefits and $852.00 in social security benefits. Mrs. Sprague receives approximately $400.00 in social security benefits.

3. Testimony revealed that Plaintiffs initially bid $57,000.00 on the Slater Road property. Defen-

dants rejected this initial bid and Plaintiffs continued to look at other homes. Plaintiffs further stated that Second National Bank had preapproved them for a mortgage credit line of $72,000.00. (See also Plaintiffs' Exhibit 10).

4. The terms of closing set November 18, 1993 as the date of possession. However, had the Defendants remained in the home beyond November 5, 1993, the contract required Defendants to pay Plaintiffs holdover rent.

Defendants showed them around the premises and presented Plaintiffs with the keys.

Plaintiffs stated that on November 6 and 7, they made daily trips to the house in order to clean and ready it for their move. During these trips, they discovered the first of many deficiencies with the property. For instance, upon entering the property on November 6, Plaintiffs noticed the presence of a strong odor throughout the house which they initially attributed to the previous owners' pets/litter boxes. Plaintiffs also discovered that a heater in the greenhouse was not functioning because of disconnected wires. Plaintiffs also stated that they had trouble obtaining a plentiful supply of water from the well—they were only able to fill two buckets, enough just to flush toilets. Plaintiffs further testified that despite their efforts to remedy the odor problem the following day by shampooing carpets and opening windows to air out the home, the odor persisted. The well continued to run dry after limited usage.

On November 9, Plaintiffs and their six children spent their first night in the home. After discovering on the morning of November 10 that the well produced only enough water to enable four children to bathe in half a tub of water, Plaintiffs contacted handyman Bliss Gilmore of Kinsman, Ohio, to inspect the well. Mr. Gilmore's inspection revealed that to remedy the low water supply, a new well was necessary. (Plaintiffs' Exhibit 8). In addition to the continuing odor and the low water supply, Plaintiffs testified that other problems began to surface. Most notable was Plaintiffs' discovery as to the cause of the permeating odor—above the ceiling tiles in the basement were found two uncapped ends of PCV pipe which appeared to be venting fumes from the septic system. Also discovered above the basement ceiling tiles were numerous loose and bare electrical wires which had been spliced together without wirenuts. Plaintiffs' testimony also revealed that electric fuses had been blowing out on a regular basis.

On December 2, 1993, Plaintiffs had the home inspected by Ashtabula County's Department of Building Regulations. A report completed by Mr. Joseph DeRosa, an electrical inspector, recorded the following findings:

(1) Numerous open splices in basement ceiling. Many without wirenuts or proper insulation. Most splices not in junction boxes. Fire & electric shock hazard.

(2) Wires from main panel to sub-panels not in conduit or part of a cable assembly. Panels overloading and overheating.

(3) Wires run through knockouts without connectors. Proper grounding procedures not followed.

(4) Wire run through clothes chute that runs from 2nd fl. to basement.

(5) Many 3 prong outlets not grounded. Some outlets reversed polarity.

(Plaintiffs' Exhibit 4). The following day, December 3, a second inspection was conducted with Plaintiffs, Defendants, a plumbing inspector and Realtor, Ms. Mary Hoffman, present. During the second inspection, additional defects were found, including the discovery that water leaked through a ceiling light fixture due to the absence of a flange on an upstairs toilet. Learning that Defendants were not in a financial position to initiate repairs or to pay Plaintiffs for such repairs, Ms. Hoffman suggested that Plaintiffs obtain estimates themselves and that the parties would later "see what they could do." [5] (Testimony of Mr. Blascak).

Testimony from Mr. Ed Biello ("Mr. Biello"), a master plumber and union carpenter later hired by Plaintiffs to perform repairs, identified the following problems: the presence of potentially deadly sewer gas emanating throughout the house; exposed, live wires, improperly spliced and connected without junction boxes; an insufficient electrical system (presence of a 60 amp system where at least a 200 amp system was needed to run baseboard heaters and appliances); absence of a vapor barrier in the attic, thus causing the roof to rot and leak; absence of vents or traps on sinks and bathroom plumbing; and direct drainage of waste water into an open ditch outside the house in lieu of

---

**5.** Plaintiffs' Exhibit 5 lists estimated costs for necessary repairs to the Slater Road property. The total cost estimated for such repairs is $21,-680.84.

being directed through the septic system. (Testimony of Mr. Biello and Plaintiffs' Exhibit 7, Form Nos. 2608–09). Mr. Biello's bill for repairing these items was $11,700.00.[6]

In addition to the work performed by Mr. Biello, Plaintiffs also applied for and received a permit to install a new well on the premises. (Plaintiffs' Exhibit 9). The well was installed by Mohr Well Drilling of Greenville, Pennsylvania, on March 18, 1994, at a cost of $3,223.50. (Plaintiffs' Exhibit 2, Invoice No. 168). Plaintiffs testified that since the installation of the new well, problems with the low water supply have been eliminated. Plaintiffs also contracted with AmeriPest Termite & Pest Control of Girard, Ohio, to eliminate bees, wasps and cluster flies that were found in and around the home. The total cost for AmeriPest's work was $330.00. (Plaintiffs' Exhibit 6). All necessary electrical, plumbing and carpentry repairs have been made to the home, with the exception of replacing the roof. Plaintiffs testified that they are financially unable to repair the roof which, according to an April 1996 proposal, will cost approximately $6,400.00. (Plaintiff's Exhibit 23).

To finance the repairs on Slater Road, Plaintiffs secured a loan through PNC Bank of Pennsylvania in the amount of $11,300.00. (Plaintiffs' Exhibit 17, p. 1). Plaintiffs also procured monies by collateralizing their 1994 tax return and by borrowing $4,230.00 on a revolving credit note from Ohio Edison/Penn Power Credit Union, Inc. of Youngstown, Ohio. (Plaintiffs' Exhibit 17, pp. 2–4).

Plaintiffs argue that Defendants fraudulently misrepresented the condition of Slater Road prior to and throughout the course of their negotiations for sale of the property. Specifically, Plaintiffs contend that Defendants, knowing of defects, falsely advertised the property as having "new plumbing" and "new wiring." Plaintiffs also contend that Defendants failed to disclose that the property was infested with cluster flies, wasps and bumble bees; the roof was in a deteriorated condition and leaked; and the new wiring, plumbing and insulation had been improperly

and incompletely installed to the threat of Plaintiffs and their six children. Plaintiffs claim that they were unaware of such defects because the defects were not itemized on the State of Ohio's Residential Property Disclosure Form ("disclosure form") as required by Ohio Revised Code § 5302.30. Plaintiffs further maintain that they relied to their detriment upon Defendants' verbal representations and the information provided by Defendants on the disclosure form required by Ohio law. Accordingly, Plaintiffs aver that Defendants' failure to disclose material latent defects in the property constitutes a violation of 11 U.S.C. § 523(a)(1) and/or (2) and thus warrants finding their claim against Defendants to be nondischargeable.

In response, Defendants have denied all Plaintiffs' allegations concerning the condition of the property and Defendants' conduct while selling Slater Road. Defendants also contend that Plaintiffs have failed to state a claim for which relief may be granted. Defendants further contend that the debt alleged by Plaintiffs was not obtained by false pretenses, false statement or actual fraud pursuant to 11 U.S.C. § 523(a)(1) or (2).

## DISCUSSION

### A. Standard of Review

The provisions for discharge of debts in bankruptcy under 11 U.S.C. §§ 727, 1141, 1228 and 1328(b) are subject to possible exception under 11 U.S.C. § 523(a), which provides for several categories of nondischargeable obligations. In the instant case, Plaintiffs' complaint and Defendants' response thereto suggest that subsections (1) and/or (2) of 11 U.S.C. § 523(a) may apply. However, contrary to the contention of the parties and given that the facts of this case do not support consideration of 11 U.S.C. § 523(a)(1), a provision limited in application to matters concerning nondischargeability of debt arising from "a tax or custom duty," this Court concludes that only one subsection applies—§ 523(a)(2). Subsection 523(a)(2) states in pertinent part:

---

6. Plaintiffs' Exhibit 7, Form No. 2625, details Mr. Biello's charges for the electrical, plumbing and carpentry repairs performed on Slater Road.

Total repair costs were as follows: $5,000.00 in electrical repairs; $5,000.00 in plumbing repairs; and $1,700.00 in carpentry work.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

▄▄▄▄ When determining whether a debt comes within any of the enumerated provisions of 11 U.S.C. § 523(a), a court should construe the Code liberally in favor of the debtor and strictly against the objecting creditor. *Manufacturer's Hanover Trust Co. v. Ward (In re Ward),* 857 F.2d 1082, 1083 (6th Cir.1988). The burden of proof in excepting a debt or claim from discharge rests with the objecting creditor to establish all elements of his *prima facie* case by "a preponderance of the evidence." *Grogan v. Garner,* 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). In *Grogan,* the Court adopted the preponderance of evidence standard on the principle that this standard more accurately reflects the balance sought by Congress between a debtor's interest in a

"fresh start" and a creditor's interest in recovering full payment on nondischargeable obligations. *Id.* at 286, 111 S.Ct. at 659.

▄▄▄▄ In the present case, Plaintiffs seek a determination of Defendants' culpability under § 523(a)(2) of the Code. Although Plaintiffs' complaint does not identify whether they seek relief under subsection (A) or (B) of § 523(a)(2), the facts herein only support analysis under § 523(a)(2)(A).[7] Specifically, § 523(a)(2)(A) disallows as an exemption from discharge such money, property, services or credit obtained by either false pretenses or actual fraud which a creditor justifiably relied upon when entering into a transaction with the debtor. In the instant case, Plaintiffs, as creditors, are asserting a claim against Defendants, as debtors, for repairs and other damages which arose as a result of Defendants' failure to disclose material and latent defects during the sale of the Slater Road property and the specific misrepresentation of the property's condition. For purposes of application, the sale of Slater Road constitutes a transaction in property sufficient to satisfy the definitional requirement of § 523(a)(2)(A).[8]

▄▄▄▄ When determining whether a creditor has satisfied the elements of a claim arising under § 523(a)(2)(A), the Court of Appeals for our Circuit has held as follows:

It is well established that in order to except a debt from discharge under section 523(a)(2)(A) "the creditor must prove that the debtor obtained money through a material misrepresentation that at the time the debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the

7. Although § 523(a)(2)(B) is frequently raised as an alternative claim in bankruptcy cases, this subsection is limited in application to situations involving allegations of fraud or misrepresentation procured through a written statement pertaining to a person's financial condition. In that the instant case does not involve a written misrepresentation of Defendants' financial condition, § 523(a)(2)(B) is not applicable here.

8. *See* 4 Collier on Bankruptcy, ¶ 523.08[1][b], at 523–41 (15th rev. ed. 1996) (quoting *Gleason v.*

*Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)):

[Property] denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attached to it in many carefully prepared writings.

*Id.* at 561, 35 S.Ct. at 289.

false representation and that its reliance was the proximate cause of the loss."

*Longo v. McLaren (In re McLaren),* 3 F.3d 958, 961 (6th Cir.1993) (citations omitted). *See also In re Ward,* 857 F.2d 1082, 1083 (6th Cir.1988); *Coman v. Phillips (In re Phillips),* 804 F.2d 930, 932 (6th Cir.1986). Although the above standard is the precedent to be followed in this Circuit, it is necessary to note that this standard was recently modified by the United States Supreme Court in *Field v. Mans,* —— U.S. ——, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995).[9] Settling the question concerning what degree of reliance should be applied by bankruptcy courts when excepting a debt because of false pretenses, a false representation or actual fraud under 11 U.S.C. § 523(a)(2)(A), the Court in *Mans* held that the proper standard is not "reasonable reliance but the less demanding one of *justifiable* reliance on the representation." *Id.* at ——, 116 S.Ct. at 439 (emphasis added).[10] Relying upon Congress' historical interpretation and statutory incorporation of the RESTATEMENT (SECOND) OF TORTS (1976), the Court made the following distinction between "reasonable" verses "justifiable" reliance:

> Although the plaintiff's reliance on the misrepresentation must be justifiable ... this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.

*Mans* at ——, 116 S.Ct. at 444 (citing RESTATEMENT (SECOND) OF TORTS, § 545A, Comment b (1976)). The Court went on to hold that claims brought under either

§ 523(a)(2)(A) or (B) are to be decided independent of each on their separate facts. With this directive, we turn to an analysis of the facts and issues before us.

### B. Analysis

 The complaint posits that Defendants intentionally and wrongfully failed to inform Plaintiffs of the existence of material and latent defects present throughout the Slater Road property. Defendants have responded by a general denial of all Plaintiffs' allegations. Defendants also contend that Plaintiffs have failed to state a claim upon which relief can be granted, asking this court to dismiss the complaint. Defendants' arguments are misguided. Pursuant to FED. R.CIV.P. 8, applicable to bankruptcy courts through FED.R.BANKR.P. 7008, a plaintiff's claim and request for relief need only be a clear and plain statement sufficient to place an opposing party on notice.

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ..., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

FED.R.BANKR.P. 7008. Plaintiffs' claim against Defendants as stated in the complaint satisfies this requirement. Accordingly, Defendants' request that Plaintiffs' complaint be dismissed is overruled. The Court likewise considers Defendants' denial of Plaintiffs' allegations to be misguided and concludes that Defendants did procure a monetary benefit as the result of false pre-

---

9. In *Mans,* creditors filed an adversary complaint under Chapter 11 seeking to except from discharge a debt which arose as the result of material misrepresentations appearing in several letters written by a debtor. These letters failed to accurately disclose to the lending creditor the conveyance by the debtor of certain real property. The Supreme Court held that by applying the reasonable person test entailing a duty to investigate, the bankruptcy court exceeded the demand of justifiable reliance. *Id.* at ————, 116 S.Ct. at 446–47.

10. By contrast, when reviewing exceptions to discharge under 11 U.S.C. § 523(a)(2)(B), the Supreme Court stated that the proper standard of reliance to be applied is not only reasonable reliance, but reliance itself. The Court also reiterated that any claim averring reliance under § 523(a)(2)(B) must show that the material misrepresentation at issue was the result of a debtor's intent to deceive. *Mans* at ——, 116 S.Ct. at 442.

tenses and fraudulent misrepresentation upon Plaintiffs.

■ Defendants' response to Plaintiffs' complaint states: "Pursuant to 11 U.S.C. 523(A)(2)(A) [sic], the debt alleged by Plaintiffs was not obtained by false pretenses, false statement, or actual fraud by Defendants." (Defendants' Answer, ¶ 4). To overcome this defense, Plaintiffs must first establish that Defendants' successful sale of the Slater Road property to them was incurred by false pretenses, a false representation or fraud. Plaintiffs must then establish by a preponderance of the evidence that (1) Defendants obtained money through a material misrepresentation that at the time the Defendants knew was false or made with gross recklessness as to its truth; (2) Defendants had an intent to deceive; (3) Plaintiffs justifiably relied upon Defendants' false representation; and (4) Plaintiffs suffered a loss. *See In re McLaren*, 3 F.3d at 961; *In re Begun*, 136 B.R. at 494. The Court believes that Plaintiffs have sustained their burden.

■ A "false pretense" involves an implied misrepresentation or conduct intended to create or foster a false impression. *In re Cole*, 164 B.R. 951, 953 (Bankr.N.D.Ohio 1993) (citing *In re Begun*, 136 B.R. 490 (Bankr.S.D.Ohio 1992)); *In re McCoy*, 114 B.R. 489, 490 (Bankr.S.D.Ohio 1990). By comparison, a "false representation" involves an expressed misrepresentation by a debtor. *In re Begun, id.* (citing *In re Dunston*, 117 B.R. 632, 639–40 (Bankr.D.Colo.1990)). Notably, a debtor's silence may constitute a materially false representation thus prohibiting discharge of indebtedness. *In re Begun, id.* (citing *In re McCoy*, 114 B.R. at 489). On the other hand, "actual fraud" has been defined to include a "deception intentionally practiced to induce another to part with property or to surrender some legal right,

and which accomplishes the end designed." *In re Cole*, 164 B.R. 951, 953 (citing *United States v. Lichota*, 351 F.2d 81 (6th Cir.1965), cert. denied, 382 U.S. 1027, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966)). Upon review of the record as a whole and determining that Defendants' failure to disclose information both in writing and verbally is analogous to silence, the Court concludes that Defendants' sale of Slater Road was incurred under "false pretenses" and "false representation." Accordingly, Plaintiffs' claim against Defendants pursuant to 11 U.S.C. § 523(a)(2)(A) is nondischargeable.

To establish that Defendants obtained money through a material misrepresentation that at the time Defendants knew was false or was made with gross recklessness as to its truth, Plaintiffs rely upon the absence of any written reference by Defendants on their disclosure form to any of the later discovered defects with the house.[11] A copy of the disclosure form was admitted as Plaintiffs' Exhibit 11 and, in part, provides the following:

> *Question A:* WATER SUPPLY: The source of water supply to the property is:
>
> *Answer: A well.*
>
> If owner knows of any current leaks, backups or other material problems with the water supply system or quantity of the water, please describe:
>
> *Response: After two or three washer loads recovery takes about 1 hr during dry season.*
>
> *Question C:* ROOF: Do you know of any current leaks or other material problems with the roof or rain gutters?
>
> *Answer: No.*

---

11. Pursuant to § 5302.30 of the Ohio Revised Code, any vendor seeking to sell or transfer residential real property is required to complete a property disclosure form. In particular, § 5302.30(D) states:

> The form ... shall be designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of water supply to the property; the nature of the sewer system serving the proper-

ty; the condition of the structure of the property, including the roof, foundation, walls, and floors; the presence of hazardous materials or substances, including lead-based paint, asbestos, urea-formaldehyde foam insulation, and radon gas; and any material defects in the property that are within the actual knowledge of the transferor.

Ohio Rev.Code Ann. § 5302.30(D) (Anderson Supp.1994).

If owner knows of any leaks or other material problems with the roof or rain gutters since owning the property (but not longer than the past 5 years) please describe and indicate any repairs completed:

*Response: None—lines for response were left blank.*

*Question E:* STRUCTURAL COMPONENTS (FOUNDATION, FLOORS, INTERIOR AND EXTERIOR WALLS): Do you know of any movement, shifting, deterioration, material cracks (other than visible minor cracks or blemishes) or other material problems with the foundation, floors, or interior/exterior walls?

*Answer: No.*

If you know of any repairs, alterations or modifications to control the cause or effect of any problem identified above, since owning the property (but not longer than the past 5 years) please describe:

*Response: None—lines for response were left blank.*

*Question F:* MECHANICAL SYSTEMS: Do you know of any current problems or defects with the mechanical systems?

*Answer: No.*

For purposes of this section, mechanical systems include electrical, plumbing (pipes), central heating and air conditioning, sump pumps, fireplace/chimney, lawn sprinkler, water softener, security system, central vacuum, or other mechanical systems that exist on the property.

*Question L:* OTHER KNOWN MATERIAL DEFECTS: The following are other known material defects currently in or on the property:

*Response: None—lines for response were. left blank.*

(Plaintiffs' Exhibit 11). Based upon their own testimony, coupled with Defendants' untelling responses to the questions on the disclosure form, Plaintiffs argue that Defendants misrepresented the true physical condition of the house. The Court agrees. Plaintiffs correctly point out that Defendants

at no time revealed any information to indicate that Mr. Sprague had personally made substantial modifications to the plumbing and electrical systems of the house and that they may not have complied with applicable building codes. Furthermore, review of the record reveals that Defendants failed to put on evidence to suggest that they intended or made attempts to disclose to Plaintiffs their modifications to these systems.

Plaintiffs also suggest that Defendants misrepresented the true condition of Slater Road when advertising the property on the market. To support this contention, Plaintiffs submitted a copy of the residential real estate listing sheet which advertised the house as having "new plumbing and wiring." (Plaintiffs' Exhibit 3). Although the record is silent as whether Defendants or their real estate agent were principally responsible for drafting the advertisement and/or confirming the veracity of representations it made, Plaintiffs' argument is well taken. Although Mr. Sprague may have used "new materials" when making modifications to the property, the real estate listings' representation of "all new plumbing-wiring" carries with it the implication that such "new plumbing and wiring" was *properly installed.* Undeniably, proper installation according to code requirements did not occur in this case.

Plaintiffs also rely upon Defendants' failure to *verbally* indicate that defects existed in the property or that there was any possibility that some of the problems experienced might occur. Rather, the record reveals that Defendants made only vague oral reference to two potential problems—the possibility of delays in water recovery time concerning the well, and later, that the home's unusual odor might be due to "moldy ceiling tiles" that had been installed in the basement. Again, Plaintiffs' argument is well taken. Support for Plaintiffs' claim in this regard is best evidenced by the fact that Defendants failed to put on any evidence to contradict Mr. Blascak's testimony referencing comments made by Mr. Sprague during the December 3, 1993 inspection indicating that Mr. Sprague was aware and suspicious that the house's foul odor was possibly related to the septic system.

Because the weight of the evidence indicated that Defendants at no time disclosed to Plaintiffs the various modifications to the property, and because the modifications were substantial and constitute material changes to the mechanical and, in some instances, structural systems of the property, the Court finds that Defendants had knowledge of material facts concerning the true condition of the house which they failed to share either verbally or in writing with Plaintiffs. Defendants' failure in this regard constitutes misleading conduct sufficient to conclude that Defendants obtained money through use of materially false representations which, at the time they were made, Defendants either knew to be false or were made in reckless disregard for the truth.

■■■■■ Plaintiffs must next establish that Defendants acted with an intent to deceive. That is, they must show that Defendants' representations were made with an intent to deceive. *See In re Phillips,* 804 F.2d 930, 932 (6th Cir.1986). However, since debtors rarely will openly disclose any indication of deceitful conduct, proving deceptive intent is the most difficult aspect of establishing a case under 11 U.S.C. § 523(a)(2)(A). Accepting this fact, intent to deceive may be inferred from an evaluation of the evidence as a whole. This includes consideration of circumstantial evidence. *See In re Begun,* 136 B.R. 490, 496 (Bankr.S.D.Ohio 1992) (citations omitted). Furthermore, intent to deceive may be inferred from representations made in reckless disregard for their accuracy or truth. *In re Fowler,* 165 B.R. 617, 619 (Bankr.N.D.Ohio 1994) (citing *In re Phillips,* 804 F.2d at 933–34). In this regard, demonstrating "gross recklessness" would warrant a finding of deceptive intent. *Id.*

■■■ While Defendants' testimony may not establish actual intent, other evidence indicates that Defendants' representations to Plaintiffs were made in gross recklessness for the truth. Defendants were aware that the purchase of their home would involve disclosure of pertinent information related to the physical condition of the home. Defendants also knew or should have known that such information was to be detailed on their real estate disclosure form as required by state law. Defendants further understood that the purpose of this form was to inform Plaintiffs of the history and physical condition of the property. The disclosure form is to be completed irrespective as to whether Plaintiffs themselves opt to have the property inspected or independently appraised.

■■■ In that the Defendants accepted Plaintiffs' $72,000.00 check for the purchase of Slater Road, and since Defendants knew or should have known that Plaintiffs would rely on the information provided by Defendants, the Court finds it more probable than not that Defendants possessed more information about the defective condition of the house than was disclosed to Plaintiffs. Defendants' course of conduct, together with the factual display of hazardous defects with the property, confirms that Defendants' pretenses and representations to Plaintiffs were both material and made with reckless disregard for their truth. *See In re McCoy,* 114 B.R. 489, 497–99 (Bankr.N.D.Ohio 1990). Accordingly, where "[a]n intent to deceive may logically be inferred from a false representation or false pretense which the debtor knows or should know will induce another individual to part with property ...," this Court must conclude that Defendants acted with an intent to deceive. *Id.* at 498 (citing *First Nat'l Bank v. Kimzey,* 761 F.2d 421, 424 (7th Cir.1985)).

■■■ Lastly, Plaintiffs need to establish that they justifiably relied upon Defendants' false pretenses or false representations and that such reliance was the proximate cause of Plaintiffs' loss. *In re Phillips,* 804 F.2d at 932. It is undisputed that Defendants received $72,000.00 from Plaintiffs for the purchase of the Slater Road property. (Plaintiffs' Exhibit 10). It is further undisputed that Plaintiffs read and relied upon information pertaining to the property as it was described in the listing sheet and in Defendants' disclosure form. Whether Plaintiffs "justifiably" relied on these representations is the only question that remains.

■■■ After the United States Supreme Court announced its decision in *Field v. Mans,* supra, the Sixth Circuit's standard for reviewing cases arising under 11 U.S.C.

§ 523(a)(2)(A) as announced in *In re Phillips* was effectively changed in one minor regard—the required degree of reliance was reduced from reasonable to the less demanding standard of justifiable reliance. Accordingly, a plaintiff has met the new standard of justifiable reliance if the plaintiff was justified in relying upon representations whose falsity, although ascertainable from some investigation, are nevertheless not ascertainable from a cursory glance or appearance to one of like knowledge and intelligence. *Field v. Mans,* —— U.S. at ——, 116 S.Ct. at 444.

Plaintiffs here have satisfied this standard. A cursory inspection of the Slater Road property prior to their purchase of the home would likely not have revealed any of the defects later discovered by Plaintiffs. Rather, for the Plaintiffs to have discovered such defects upon a cursory inspection of the property would have required Plaintiffs to flush the toilets to ensure a plentiful water supply, to inspect the attic and insulation for the absence of insects and leaks and to remove the basement ceiling tiles to ensure proper wiring and plumbing. Although such a routine should be encouraged and should be conducted by a professional prior to the purchase of any property, an inspection of this nature is not required and is substituted for by the property disclosure form required by Ohio Revised Code § 5302.30. The fact that Plaintiffs elected not to perform such an inspection but opted to rely on the disclosure form should not have any bearing as to the degree of their reliance upon Defendants' representations concerning the condition of the property. However, consideration should be given to misleading advertisements and vague discussions. For the reasons outlined herein, Plaintiffs were justified in relying upon Defendants' representations to the extent such were made.

## CONCLUSION

Upon review of the evidence as a whole, the Court concludes that Plaintiffs have successfully established that (1) Defendants obtained money by false pretenses, false representation or actual fraud; (2) a material misrepresentation was made by Defendants knowing at the time that it was false or made with gross recklessness as to its truth; (3) Defendants acted with an intent to deceive by withholding disclosure of pertinent information; (4) Plaintiffs justifiably relied upon Defendants' false representation; and (5) Plaintiffs suffered a loss proximately resulting from Defendants' conduct. Accordingly, the Court holds that Plaintiffs' claim against Defendants, in whatever amount the state court may find, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Upon this conclusion, this cause is remanded to the Ashtabula County Court of Common Pleas for determination of those issues arising under state law.

An appropriate order shall issue.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion entered this date, Plaintiffs Joseph and Deborah Blascak's claim against Defendants Richard and Ruthann Sprague is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Upon this conclusion, this cause is remanded to the Ashtabula County Court of Common Pleas for a determination of those issues governed by state law, including the applicability of Ohio Revised Code § 5302.30 and a determination of the amount of Defendants' aggregate debt and the extent, if any, of Plaintiffs' damages.

**IT IS SO ORDERED.**