**In re Theodore J. BALINT, II, Rebecca Jean Balint, Debtor.**

**Walter H. NORMAN, Plaintiff,**

**v.**

**Theodore J. BALINT, II Rebecca Jean Balint, Defendants.**

**Bankruptcy No. 96–63567.**
**Adversary No. 97–6091.**

United States Bankruptcy Court,
N.D. Ohio.

Nov. 7, 1997.

Donald M. Miller, G.S. Krainess Co., L.P.A., Canton, OH, for Plaintiff.

William C. Greene, New Philadelphia, OH, for Defendants.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Pending before the Court is the Complaint of Plaintiff, Walter H. Norman, seeking a finding of nondischargeability of certain claims under Sections 523(a)(2)(A) and 523(a)(6) of Title 11 of the United States Code and for judgment against the Defendants, Theodore J. Balint II and Rebecca Jean Balint, for $100,000.00 as compensatory and punitive damages. A trial was conducted on September 16, 1997, and the matter was taken under advisement. For the reasons stated below, Mr. Norman's request for relief will be denied.

### FACTS

Mr. Norman owns approximately thirty acres of land located in Carroll County, Ohio. In May, 1995, Mr. Norman rented the house located on his property to Todd Rohr in exchange for Mr. Rohr maintaining the house and the land. The Balints and Mr.

Rohr were friends. Mr. Balint drafted the documents to incorporate Mr. Rohr's business. Mr. Balint also assisted Mr. Rohr by purchasing equipment for Mr. Rohr's business and individual use, paying for debts incurred by Mr. Rohr in operating the business, and lending Mr. Rohr money for his personal use. In September 1995, Mr. Norman entered into an agreement with Mr. Rohr to sell on an installment land contract ten acres of land and the structures located on the land for $30,000.00. Mr. Rohr asked Mr. Balint, who had prior experience in transferring real estate through drafting documents for the purchase of his own home, to prepare the documents necessary to transfer the property.

Mr. Balint met with Mr. Norman, Mr. Rohr, and Mr. Norman's mother to discuss the sale of Mr. Norman's property to Mr. Rohr. Pursuant to that discussion, Mr. Balint explained his knowledge of land contracts based upon his personal experience. It was determined at trial that both Mr. Norman and Mr Rohr knew that Mr. Balint was not an attorney. Based upon these discussions, Mr. Balint drafted the purchase agreement between Mr. Norman and Mr. Rohr which provided for the purchase of the ten acres of land for $30,000.00 with a $1,000.00 down payment. The terms and conditions of the sale included that Mr. Norman would hold a first mortgage at 8% interest per annum for fifteen years and Mr. Rohr would make monthly installment payments to Mr. Norman of $277.24. The purchase agreement specifically provided that an installment land contract and quit claim deed to the property would be prepared by Mr. Rohr and all documents would be signed thirty days from the signing of the purchase agreement. Mr. Norman testified that he understood and signed the purchase agreement.

Pursuant to the terms of the purchase agreement, an installment land contract and quit claim deed were prepared by Mr. Balint. On October 22, 1995, the parties met to close the transaction. Mr. Norman admits to signing the installment land contract; however, he denies ever seeing or signing the quit claim deed which transferred the property to Mr. Rohr. The quit claim deed, however, bears a signature purporting to be Mr. Norman's, it was witnessed by Mrs. Balint and Sandra Norman, and was notarized by Mr. Balint. The quit claim deed was recorded by Mr. Rohr on October 30, 1995. The installment land contract was not recorded by Mr. Norman until October, 1996.

Subsequently, Mr. Rohr obtained two mortgages from Beneficial Mortgage Co. in the sum of $52,880.00 secured by the real property. Mr. Rohr did not apply the proceeds received from the mortgages to the installment land contract. Mr. Rohr made payments to Mr. Norman on the installment land contract from November, 1995 through January, 1997. In January, 1997, Mr. Norman filed a complaint against Mr. Rohr. Mr. Rohr has moved out of Ohio and his whereabouts are unknown. A mortgage in favor of Beneficial Mortgage Co. securing a balance of approximately $28,000.00 is currently a lien against the property. It was established at trial that Mr. Balint did not receive any compensation for drafting the purchase agreement, the installment land contract, or the quit claim deed.

On May 14, 1997, Mr. Norman filed a complaint in this court alleging that Mr. and Mrs. Balint conspired with Mr. Rohr to defraud Mr. Norman out of the $27,567.24 remaining to be paid on the installment land contract plus 10% interest per annum from January, 1997. Mr. Norman asserts that Mr. and Mrs. Balint intentionally committed a fraud upon him in violation of 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(6). Mr. Norman therefore maintains that his claims against Mr. and Mrs. Balint are nondischargeable and that a judgment should be entered in his favor in the amount of $100,-000.00 as compensatory and punitive damages.

Mr. Norman presented testimony that Mr. Balint admitted he advised Mr. Rohr that a mortgage could be obtained on the land if Mr. Rohr recorded the quit claim deed. Mr. Norman further established through the testimony of Mr. Balint that Mr. Balint purchased his own land on an installment land contract. Mr. Norman alleges that Mr. Balint advised Mr. Rohr to record the quit claim deed and obtain a mortgage on the property.

Mr. Norman testified under oath that he did not sign the quit claim deed and did not receive the land contract until several months after it was signed. Further, Sandra Norman, Mr. Norman's wife, testified that she witnessed the installment land contract but not the quit claim deed to Mr. Norman's land. Mr. Norman presented a handwriting expert who could not conclusively establish whether Mr. Norman, in fact, signed the quit claim deed because only a copy of the deed was available for analysis as the original is presumably in the possession of Mr. Rohr.

Mr. and Mrs. Balint deny conspiring with Mr. Rohr to defraud Mr. Norman. Mr. Balint asserts that his only involvement in the transaction was to explain his knowledge of land contracts and to draft the documents for the benefit of both parties. Mr. Balint testified under oath that Mr. Norman signed both the installment land contract and the quit claim deed and points to the terms of the purchase agreement to support his position. The purchase agreement specifically states that the installment land contract and the quit claim deed would be signed thirty days from the execution of the purchase agreement. Thus, Mr. Balint asserts that Mr. Norman intended to transfer title to Mr. Rohr through the execution of a quit claim deed. Mrs. Balint testified that she witnessed Mr. Norman sign two documents that were the installment land contract and the quit claim deed. Mr. Balint also presented a handwriting expert who testified that the signature of Mr. Norman on the quit claim deed was identical to Mr. Norman's admitted signature on the installment land contract. Mr. Balint also testified that he mistakenly believed that a recorded land contract acted as a first mortgage on the property and that he was only attempting to assist his friend Mr. Rohr in drafting the documents to purchase the property from Mr. Norman.

### DISCUSSION

The Court has jurisdiction in this proceeding by virtue of 28 U.S.C. § 1334(b) and General Order No 84 entered in this district on July 16, 1984. This is a core proceeding under § 157(b)(2)(B) and (I). This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Under Section 523(a)(2)(A), a discharge under 11 U.S.C. Section 727 does not discharge an individual from any debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -

(A) false pretenses, a false representation or actual fraud other than a statement respecting the debtor's or an insider's financial condition;

### 1. Dischargeability under 11 U.S.C. § 523(a)(2)(A)

The United States Supreme Court has instructed that only "honest but unfortunate" debtors should be afforded a "fresh start" in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). To except a debt from discharge under Section § 523(a)(2)(A), the plaintiff must prove (1) that the debtor obtained money, property, services, or an extension, renewal, or refinancing of credit, (2) through a material misrepresentation, (3) that the debtor knew said misrepresentation was false or that the misrepresentation was made with gross recklessness as to its truth, (4) that the debtor intended to deceive the creditor, (5) that the creditor justifiably relied on the false representation, and (6) that its reliance was the proximate cause of loss. *Field v. Mans*, 516 U.S. 49, 60–62, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995) (establishing that the proper standard is justifiable reliance rather than reasonable reliance); *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993) (citations omitted). The so-called fraudulent debt exception, as with others enumerated in Section 523, is to be strictly construed in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Manufacturer's Hanover Trust Co. v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir.1988). The plaintiff bears the burden of proof as to each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 286, 111 S.Ct. at 659.

First, it is unclear whether Section 523(a)(2)(A) applies in this situation because there is no showing that Mr. and Mrs. Balint obtained money, property, services, or an extension of credit for assisting Mr. Norman and Mr. Rohr in effectuating the real estate transaction. Second, Mr. Norman has presented inconclusive evidence to show that Mr. and Mrs. Balint intended to deceive Mr. Norman when drafting the documents to assist Mr. Norman and Mr. Rohr in closing the real estate transaction. An essential factor in determining if Mr. and Mrs. Balint's alleged debt to Mr. Norman is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code turns on whether the Balints' knew that by drafting the necessary documents to close the transaction they would be assisting Mr. Rohr in committing a fraud against Mr. Norman.

■ Under Section 523(a)(2)(A) of the Bankruptcy Code, Mr. Norman must establish that Mr. and Mrs. Balint acted with an intent to deceive. *Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986). However, since debtors will rarely disclose any indication of deceitful conduct, intent may be inferred from am evaluation of the evidence as a whole. This includes consideration of circumstantial evidence. *Germain Lincoln Mercury of Columbus, Inc. v. Begun (In re Begun)*, 136 B.R. 490, 496 (Bankr. S.D.Ohio 1992).

■ When applying these standards in this case, it is evident that Mr. Norman has not met his burden in establishing, by a preponderance of the evidence, Mr. and Mrs. Balint's intent to deceive. The record is void of any proof of false pretenses, false representations, or fraud committed by Mr. and Mrs Balint. There was no evidence presented to show that Mr. Balint participated in the negotiation of the terms of the real estate transaction between Mr. Norman and Mr. Rohr. It was determined at trial that Mr. Norman knew that Mr. Balint was not an attorney but only was to draft the necessary documents because of his personal experience in handling an identical transaction concerning his own land. As to the validity of the quit claim deed, Mr. Norman's handwriting expert was unable to conclude that Mr.

Norman's signature on the quit claim deed was a forgery. In fact, Mr. Balint's handwriting expert in comparing Mr. Norman's signature on the installment land contract with the signature on the quit claim deed testified that he was fairly certain that Mr. Norman signed the quit claim deed. Mrs. Balint testified that she witnessed Mr. Norman's signature on the installment land contract and the quit claim deed. Furthermore, Mr. Balint testified under oath that he did not receive any compensation from Mr. Rohr or Mr. Norman for drafting the documents to complete the real estate transaction. In light of these factors, the Court cannot conclude that Mr. and Mrs. Balint had intent to deceive Mr. Norman.

■ Furthermore, Mr. Norman has not established that he justifiably relied upon Mr. and Mrs. Balint's alleged false representations and that such reliance was the proximate cause of Mr. Norman's loss. *In re Phillips*, 804 F.2d at 932. After the United States Supreme Court announced its decision in *Field v. Mans, supra*, the Sixth Circuit's standard for reviewing cases arising under Section 523(a)(2)(A) as announced in *In re Phillips*, was effectively changed in one regard—the required degree of reliance was reduced from reasonable to the less demanding standard of justifiable reliance. *Blascak v. Sprague (In re Sprague)*, 205 B.R. 851, 862 (Bankr.N.D.Ohio 1997). Accordingly, a plaintiff has met the new standard of justifiable reliance if the plaintiff was. justified in relying upon representations whose falsity, although ascertainable from some investigation, are nevertheless not ascertainable from a cursory glance to one of like knowledge and intelligence. *Field v. Mans*, 516 U.S. at 70–72, 116 S.Ct. at 444.

■ Mr. Norman has not satisfied this standard. Mr. Norman failed to put on any evidence to support his claim of detrimental reliance upon either the representations or the conduct of Mr. and Mrs. Balint. A cursory inspection of the purchase agreement would reveal that both an installment land contract and a quit claim deed were to be prepared and ready for signing thirty days from the signing of the purchase agreement.

Mr. Balint testified that he erroneously believed that a recorded installment land contract acted as a first mortgage on the property. Preparing a deed and an installment land contract simultaneously is obviously legally inconsistent. Such were, however, the terms of the purchase agreement and Mr. Norman admitted in his testimony that he understood and signed the purchase agreement. It is undisputed that Mr. Norman knew that Mr. Balint was not an attorney and that his only experience in such matters concerned transactions involving Mr. Balint's own land. Mr. Norman should have sought the advice of an attorney before signing them. For the reasons outlined herein, Mr. Norman was not justified in relying upon Mr. and Mrs. Balint's representations to the extent such were made. Based on these factors, the Court concludes that Mr. Norman is not entitled to recovery under Section 523(a)(2)(A) of the Bankruptcy Code.

### 2. *Dischargeability under 11 U.S.C. § 523(a)(6)*

 Mr. Norman also asserts that his claims against Mr. and Mrs. Balint are nondischargeable under the provisions of Section 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) provides that Section 727 cannot be used to grant an individual debtor a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To find a debt nondischargeable on this basis, the underlying conduct must be both willful and malicious. Willful behavior is deliberate or intentional conduct which necessarily leads to injury. *Perkins v. Scharffe*, 817 F.2d 392, 393–94 (6th Cir.1987). A malicious act is one done without just cause or rational justification, and need not contain elements of ill will or intent to harm the victim. *Schmidt v. Schmehl (In re Schmehl)*, 57 B.R. 546, 547 (Bankr.N.D.Ohio 1986). Here also the plaintiff bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 286, 111 S.Ct. at 659.

 The Court finds that Mr. Norman has not met his burden. Mr. Norman likely has shown that Mr. Balint's actions in drafting a purchase agreement which provided that both an installment land contract and a quit claim deed would be prepared thirty days from the execution of the purchase agreement was willful. However, Mr. Norman has failed to show that such action by Mr. and Mrs. Balint was malicious. Mr. Balint has testified that he erroneously believed that a recorded installment land contract acted as a first mortgage on the property. Although Mr. Balint's understanding of the relationship between installment land contracts and deeds was erroneous and negligent, it was not malicious. It was understood by both Mr, Norman and Mr. Rohr that Mr. Balint was not an attorney but that his only experience in real estate matters involved the purchase of his own land. Mr. Norman presented no evidence that Mr. Balint assisted in negotiating the terms of the agreement. The handwriting expert who testified on behalf of Mr. Balint stated that he was fairly certain that Mr. Norman signed the quit claim deed. Furthermore, Mr. Balint did not receive any compensation for assisting Mr. Norman and Mr. Rohr in effectuating the real estate transaction. In light of these facts, the Court concludes that Mr. and Mrs. Balint did not act maliciously in respect to the real estate transaction between Mr. Norman and Mr. Rohr.

### CONCLUSION

Based upon a review of the record and for the reasons set forth herein, the Court concludes that Mr. Norman has failed to meet his burden of proof under Sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. The Court therefore concludes that Mr. Norman's prayer for relief must be DENIED.